**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,**  Plaintiff,  v.  **T-MOBILE USA, INC. and T-MOBILE US, INC.,**  Defendants. | Civil Action No.  2:16-cv-00715-JRG-RSP  JURY TRIAL DEMANDED |

**HUAWEI'S RESPONSE TO T-MOBILE'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

## Table of Contents

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND OF THE PARTIES' CONTRACTUAL DISPUTE ............................ 2

    A.   Huawei's Contractual Obligation Regarding its Standards
        Essential Patents ................................................................................................ 2

    B.   T-Mobile's Breach of Contract Accusations ......................................................... 3

III.  THE COURT HAS SUBJECT MATTER JURISDICTION OVER
      THIS CONTRACT DISPUTE .................................................................................. 5

    A.   T-Mobile's Threats Give Rise to an Actual Case or Controversy .......................... 5

    B.   A Favorable Decision Would Estop T-Mobile's Breach of
        Contract Threats ............................................................................................... 6

    C.   Huawei is not Seeking an Advisory Opinion ....................................................... 8

IV.  THE DECLARATORY JUDGMENT FACTORS FAVOR HUAWEI ........................ 11

V.   CONCLUSION ....................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Apple Inc. v. Motorola Mobility, Inc.*,
  No. 11-CV-178-BBC, 2011 WL 7324582 (W.D. Wis. June 7, 2011)...................13

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  920 F. Supp. 2d 1116 (N.D. Cal. 2013) .........................................................9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:12-cv-100, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015)............................12

*Ericsson, Inc. v. D-Link Sys.*,
  No. 6:10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part,
  rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) ...........................................13

*InterDigital Communication, Inc. v. ZTE Corp.*,
  No. 13-cv-00009, 2014 WL 2206218 (D. Del. May 28, 2014) ...............................10

*Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*,
  599 F.3d 1277 (Fed. Cir. 2010)...............................................................9

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823, 2012 WL4827743 (W.D. Wa. Oct. 10, 2012)...................................9

*Orix Credit Alliance, Inc. v. Wolfe*,
  212 F.3d 891 (5th Cir. 2000) ..............................................................10

*Research in Motion Ltd. v. Motorola, Inc.*,
  644 F. Supp. 2d 788 (N.D. Tex. 2008) ................................................6, 14, 15

*Sherwin-Williams Co. v. Holmes Cnty.*,
  343 F.3d 383 (5th Cir. 2003) ..............................................................15

*State Indus., Inc. v. Fain*,
  61 Fed. App'x 119, 2003 WL 342242 (5th Cir. 2003) ........................................9

*True North Composites, LLC v. Trinity Indus., Inc.*,
  65 Fed. App'x 266, 2003 WL 21206154 (Fed. Cir. 2003) .....................................9

**Statutes**

28 U.S.C. § 1332................................................................................4, 8

I.      **Introduction**

By focusing on infringement, T-Mobile fundamentally misrepresents the basis and scope of Huawei's declaratory judgment action. Indeed, T-Mobile's Motion opens with the supposed "fundamental defect" of Huawei's Complaint: "a party cannot be compelled to pay royalties for patents that it has not been proven to infringe—on the merits, in a proper infringement action." Mot. at 1. But, as T-Mobile recognizes elsewhere in its Motion,[1] this is not an action for patent infringement or for patent damages. Rather, it is a contract case, which is immediately apparent according to the title of the very Complaint that T-Mobile seeks to dismiss: "Original Complaint for Declaratory Judgment of Compliance with Standard Essential Patent FRAND Obligations." Also, a quick review of the Civil Cover Sheet confirms this is a "contract" action. And, ignored by T-Mobile's Motion, Huawei's Complaint affirmatively asserts that "[t]his Court has subject matter jurisdiction over Huawei's claims for declaratory judgment that *inter alia* it has not breached its FRAND commitment under 28 U.S.C. § 1332." Compl. ¶ 77.

T-Mobile's Motion never claims that the Court does ***not*** have subject matter jurisdiction over threatened breach of contract actions. To the contrary, T-Mobile's Motion admits that Huawei has "irrevocable written undertakings" (*i.e.*, contracts) and T-Mobile's Motion does not dispute that T-Mobile has repeatedly accused Huawei of "violating" those "undertakings" (*i.e.*, breaching those contracts). First, T-Mobile tells the Court "Huawei has submitted irrevocable written undertakings committing that it is prepared to grant irrevocable licenses on FRAND terms and conditions." Indeed, T-Mobile's representation is even found in a section titled "Huawei's Binding FRAND Commitments." Second, as recounted in Huawei's Complaint, T-

---

[1] "Huawei's prayers for relief do not request that the Court find that T-Mobile is actually using any of Huawei's patents. Nor does Huawei request that the Court order T-Mobile to pay Huawei's offer if it is found to be FRAND." (Mot. at 8.)

Mobile (wrongly) accused Huawei of breaching those "Binding FRAND Commitments." For example, the Complaint asserts, and T-Mobile leaves undisputed, that:

- "without any detail or specific objection, T-Mobile affirmatively asserted that Huawei's FRAND Offer was 'fundamentally inconsistent with Huawei's FRAND obligations.'" Compl. ¶ 51.
- "T-Mobile sent another letter affirmatively alleging – again without support – Huawei 'violate[d] the commitment it made that it would be prepared to license its patents on FRAND terms and conditions.'" Compl. ¶ 52.

To defend against T-Mobile's repeated allegations threatening future lawsuits, Huawei properly seeks a judgment that it has complied with "Huawei's Binding FRAND Commitments."

In short, this is a contract action prompted by T-Mobile's many threats, accusing Huawei of breaching its FRAND obligation. T-Mobile's Motion to Dismiss for "Lack of Subject Matter Jurisdiction" never truly questions the subject matter jurisdiction of Huawei's contract claims, but rather challenges whether the Court should exercise its discretion to grant Huawei's requested declaratory judgment relief. Because a case or controversy exists between the parties regarding Huawei's compliance with its FRAND obligation, T-Mobile's Motion should be denied.

## II.     Background of the Parties' Contractual Dispute

T-Mobile's Motion does not dispute the facts underlying Huawei's contract action outlined in the Complaint.

### A.     Huawei's Contractual Obligation Regarding its Standards Essential Patents

First, as set forth in the Complaint, Huawei has an obligation to offer licenses to its standard essential patents (or SEPs) on FRAND terms. At issue here, Huawei holds numerous patents that are essential to LTE network standards described in various 3GPP technical specifications. *See, e.g.*, Compl. ¶¶ 57-76. As the Complaint explains, Huawei has declared to ETSI, and the public, that it would offer licenses to its LTE essential patents on FRAND terms.

*See, e.g.*, Compl. ¶¶ 1, 2, 3, 5, 25, 56, 76, 77, 82. And T-Mobile's Motion recognizes that by Huawei declaring certain of its LTE patents as essential to LTE standards, "Huawei has submitted irrevocable written undertakings committing that it is prepared to grant irrevocable licenses on FRAND terms and conditions." Mot. at 5. In fact, T-Mobile's ***Motion*** contains lengthy allegations detailing Huawei's contractual obligation. *See id*. at 3–6. As such, there can be no question that the heart of the instant dispute is a contract.

### B. T-Mobile's Breach of Contract Accusations

Second, T-Mobile's Motion does not dispute that Huawei tried to negotiate a patent license to Huawei's LTE essential portfolio, that T-Mobile operates networks that comply with the LTE standard Huawei helped develop, and that T-Mobile (wrongly) accused Huawei of "violating" its FRAND obligation regarding Huawei's LTE essential patent portfolio.

Huawei first contacted T-Mobile on June 6, 2014 regarding Huawei's LTE-essential technology and T-Mobile's need of a license to that technology. *See* Compl. ¶ 38. As outlined in Huawei's Complaint, T-Mobile refused to engage in good faith negotiations, and Huawei was forced to file a series of infringement lawsuits on certain of its essential patents.[2] Compl. ¶¶ 38–43. Despite T-Mobile's refusal to enter into license negotiations for nearly two years, Huawei made a FRAND offer to T-Mobile under which T-Mobile would receive a license to Huawei's LTE-essential patents. Compl. ¶¶ 47–48. Huawei's offer to T-Mobile included a fair, reasonable, and non-discriminatory royalty that took into consideration several mitigating factors, including that T-Mobile's "standard conforming networks use some equipment licensed by Huawei." Compl. ¶ 48. In fact, as part of the negotiations, Huawei went so far as to propose

---

[2] Interestingly, T-Mobile has yet to answer those complaints and instead filed a series of Motions to Dismiss based on an alleged lack of clarity as to what was accused. But, soon after, one of T-Mobile's suppliers understood the accusations enough to intervene in those actions.

HUAWEI'S RESPONSE TO T-MOBILE'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION                                                                    Page 3

that the parties "submit to binding arbitration to resolve any disputes in finalizing license terms [and] suggested – among other things – the arbitration hearing occur in the United States, as well as requesting a stay to Huawei's pending patent infringement suits against T-Mobile during the arbitration." Compl. ¶¶ 49. T-Mobile refused.

During those negotiations, Huawei established T-Mobile's practice of the LTE standard. For example, as detailed in Huawei's Complaint, T-Mobile publicly promotes its LTE networks, even including an LTE-practicing map in its SEC filings:



Compl. ¶¶ 28-34. To ensure T-Mobile was fully aware of its need for a license, Huawei sent T-Mobile a list of 181 example patents and then sent dozens of claims charts detailing T-Mobile's unlicensed practice of Huawei's LTE patents. Compl. ¶¶ 43, 55. Again, while T-Mobile makes much of infringement even though this is a contract case, its Motion does not dispute T-Mobile's practice of LTE.

T-Mobile's Motion also does not dispute that T-Mobile (wrongly) accused Huawei of "violating" its FRAND obligation for the LTE patents. For example, on May 2, 2016, T-Mobile contended in a letter to Huawei that Huawei's FRAND offer was "fundamentally inconsistent with Huawei's FRAND obligations." Compl. ¶ 51. Again on May 11, 2016, in a second letter,

T-Mobile alleged that Huawei "violate[d] the commitment it made that it would be prepared to license its patents on FRAND terms and conditions." Compl. ¶ 52. Even T-Mobile's Motion reiterates the accusation that Huawei is in breach, arguing that Huawei has supposedly violated its ETSI commitment by offering T-Mobile a license to its entire portfolio of LTE-essential patents, rather than on a patent-by-patent basis. Mot. at 3–6. There is an unquestioned dispute between the parties as to Huawei's compliance with its FRAND obligation.

Instead of showing the lack of case or controversy, T-Mobile's Motion *confirms* the existence of a contract, *confirms* that the parties disagree on the proper interpretation of that contract, and *confirms* that there is a current dispute between the parties regarding Huawei's alleged breach of that contract.

### III. The Court has Subject Matter Jurisdiction over this Contract Dispute

Here, Huawei comes to this Court as any party to a contract accused of a breach may, and Huawei seeks a declaration that it is not in breach of its contract obligation to ETSI or T-Mobile. To the point, Huawei's Complaint asserts that "[t]his Court has subject matter jurisdiction over Huawei's claims for declaratory judgment that *inter alia* it has not breached its FRAND commitment under 28 U.S.C. § 1332." Compl. ¶ 77. While spending pages on the requested relief, T-Mobile's Motion simply avoids the underlying – and undisputed – nature of the action before the Court. T-Mobile does not create any cognizable dispute regarding whether the Court has actual subject matter jurisdiction over contract disputes.

### A. T-Mobile's Threats Give Rise to an Actual Case or Controversy

When T-Mobile makes an express written accusation about Huawei's compliance with its FRAND obligation, Huawei must take that accusation seriously instead of merely waiting to be sued. T-Mobile's accusation is similar to those actually brought in breach of contract actions by putative licensees. For example, in *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823, 2012

WL4827743, *3 (W.D. Wa. Oct. 10, 2012), Microsoft brought a breach of contract claim against Motorola claiming that Motorola's proffered royalty rates were unreasonable and thus breached Motorola's standards-related obligations. The breach of contract claim was based on two letters from Motorola offering Microsoft a license to Motorola's portfolio. *Id.* Similarly, in *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 920 F. Supp. 2d 1116, 1140-41 (N.D. Cal. 2013), Samsung offered Apple a license to its essential patent portfolio at a 2.4% royalty rate, and Apple brought a breach of contract claim alleging that Samsung's offer violated its FRAND licensing obligation under the ETSI IPR Policy.

Moreover, the Fifth and Federal Circuits have considered breach of contract declaratory judgment claims similar to Huawei's. For example, in *State Indus., Inc. v. Fain*, 61 Fed. App'x 119, 2003 WL 342242 (5th Cir. 2003), the Fifth Circuit affirmed summary judgment in favor of declaratory plaintiff State Industries that it had not breached a settlement agreement. Likewise, the Federal Circuit considered the issue in *Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277, 1279 (Fed. Cir. 2010). There, LabCorp filed a complaint for declaratory judgment that it did not breach a license agreement for failure to pay know-how royalties on homocysteine assays. The Federal Circuit ultimately concluded the appeal should have been brought to the Tenth Circuit, but did not contest that the district court had subject matter jurisdiction over the declaratory judgment claim. *See id.* at 1279-80, 1286; *see also True North Composites, LLC v. Trinity Indus., Inc.*, 65 Fed. App'x 266, 267, 2003 WL 21206154 (Fed. Cir. 2003) (reviewing similar claim). T-Mobile's jurisdictional challenge to the present case runs afoul of these well-established precedents.

### B.     A Favorable Decision Would Estop T-Mobile's Breach of Contract Threats

Given the T-Mobile-admitted contract and the T-Mobile-alleged breach, a declaration regarding Huawei's compliance with its FRAND obligation would directly address an alleged

injury. Specifically, a declaration in Huawei's favor would extinguish T-Mobile's breach of contract claim. Dispelling T-Mobile's threatened claim in this manner is not just a mere "negotiation tool." Rather, a judgment for Huawei would conclusively establish the parties' respective legal rights vis-à-vis Huawei's contractual obligation under the ETSI IPR policy. And a judgment for T-Mobile would require Huawei to affirmatively cure the breach such that it could ensure it is meeting its important FRAND obligation to T-Mobile and the public. This is the essence of a redressible injury.

T-Mobile's citation to the *Interdigital* case is unavailing. *See* Mot. at 13. As a preliminary matter, the *Interdigital* Court assumed for purposes of its analysis that "there is adversity of interest in the parties and that the Court could conclusively decide a FRAND rate." *InterDigital Communication, Inc. v. ZTE Corp.*, No. 13-cv-00009, 2014 WL 2206218, at *2 (D. Del. May 28, 2014). The Court's holding in *Interdigital* focused on the third element of the Third Circuit's test for declaratory judgment suits – "the practical help, or utility of [the] judgment." *Id*. The Fifth Circuit's declaratory judgment standard does not include this specific element. *See Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000). In any event, in *Interdigital*, the Court found that a declaratory judgment of a FRAND rate would serve "little to no useful purpose" since none of the parties would be bound by the determination and it would only serve as a negotiation tool. *Id*. at *2-3. By contrast, in this declaratory judgment action, Huawei is already contractually bound by its FRAND obligation, and Huawei does not seek to impose a portfolio-wide license on T-Mobile. Rather, the determination of Huawei's compliance with its obligation would serve the purpose of extinguishing T-Mobile's threatened breach of contract claim. Finally, unlike in *Interdigital*, Huawei and T-Mobile would both be bound by the Court's resolution of their contract dispute.

### C. Huawei is not Seeking an Advisory Opinion

A declaration by this Court that Huawei complied with its contractual obligation would not be an "advisory opinion" as it would immediately impact the legal rights of the parties. First, a ruling in Huawei's favor would estop T-Mobile's threatened breach of contract allegations just as a declaratory judgment of non-infringement estops a patent holder's allegations of patent infringement. If Huawei prevailed on its claim, T-Mobile would be bound by the decision of this Court. T-Mobile could not re-litigate the same issue in a second action based on the same nucleus of operative facts (*i.e.*, T-Mobile could not allege that Huawei breached its FRAND commitment in offering T-Mobile a portfolio-wide license). In other words, this action will preclude T-Mobile from following through on its threatened breach of contract action. And Huawei would likewise be bound by any adverse ruling. As such, T-Mobile's allegation that a ruling "would not affect any legal rights between Huawei and T-Mobile" incongruously ignores the estopping impact that a ruling would have on its threatened breach of contract claim.

Second, T-Mobile's discussion of this case's impact on its infringement of Huawei's patents, or on its obligation to pay a royalty to Huawei, misses the mark. For example, T-Mobile oddly alleges that "[a] necessary predicate for the adjudication of Huawei's claimed entitlement to patent royalties . . . [is] to prove that T-Mobile infringes." Mot. at 11. But Huawei's Complaint does not ask the Court to find that Huawei is entitled to royalties from T-Mobile, nor does it ask the Court to order T-Mobile to pay any such royalties. Instead, the issue is whether Huawei's offer to T-Mobile complied with its FRAND obligation and resolution of that question would also establish the futility of T-Mobile's threatened contract allegations based thereon.

And T-Mobile's arguments regarding its status as an "unwilling" licensee suffer a similar defect. Huawei has not sought damages from T-Mobile in this action, only a determination that it complied with its FRAND obligation and that T-Mobile has acted as an "unwilling licensee."

Contrary to T-Mobile's Motion, such a determination would alter the legal relationship between the parties. For example, it allows Huawei to pursue injunctive relief, and would subject T-Mobile to the risk of injunction if it elected to continue its LTE network services without a license. Moreover, a single determination of T-Mobile's status as an unwilling licensee would be far more efficient in this action than in the separate infringement cases. T-Mobile's behavior as a "willing" or "unwilling" licensee cuts across all of the infringement actions and thus the single determination in this action can be used by the Court in each of the separate infringement actions for purposes of injunctive relief or enhanced damages. Thus, T-Mobile's arguments on this point are irrelevant.

Having failed to appreciate the basis for Huawei's claim, the majority of the case law cited by T-Mobile is inapposite, and none of it compels dismissal of Huawei's declaratory judgment complaint. For example, in *Core Wireless*, cited by T-Mobile, the **patent holder** filed a breach of contract claim alleging that an **accused infringer** had failed to comply with the ETSI IPR policy by failing to engage in FRAND negotiations. *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100, 2015 WL 4775973, *1-2 (E.D. Tex. Aug. 11, 2015). The Court in *Core Wireless* held that the patent holder could not use a breach of contract claim as a shortcut impose a license on an accused infringer. *See id*. Huawei's complaint does not allege that T-Mobile has breached any ETSI obligation it may have and does not seek to impose a license on T-Mobile. Instead, Huawei's complaint seeks the opposite – a confirmation that **Huawei** has complied with its ETSI obligation and that **T-Mobile's** contract allegations are wrong.

The additional law cited by T-Mobile fares no better. For example, in *Ericsson*, the *infringer* asked the Court to determine a (F)RAND[3] rate for a standards-essential patent portfolio, but the infringer would not agree to be bound by the determination. *See Ericsson, Inc. v. D-Link Sys.*, No. 6:10-cv-473, 2013 WL 4046225 (E.D. Tex. Aug. 6, 2013), *aff'd in part, rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014). The Court's ruling would have been an advisory opinion because the infringer's refusal to be bound by its own request gave it no practicable impact. *Id*. By contrast, here, Huawei is not asking the Court to impose a FRAND royalty on T-Mobile. Moreover, determining if Huawei's offer was a FRAND offer dictates whether or not Huawei complied with its ETSI obligation (or whether it must seek to cure any breach) and extinguishes T-Mobile's threatened breach of contract claim.

Similarly, *Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*, cited by T-Mobile, dealt with a different posture than the instant case. In *Apple v. Ericsson*, Apple filed a claim for declaratory judgment of non-infringement of seven patents, and Ericsson moved to dismiss the complaint on the grounds that these seven patents were "an inconsequential drop in the ocean" in the parties' dispute over Ericsson's patent portfolio. No. 15-cv-00154-JD, 2015 WL 1802467, at *2 (N.D. Cal. Apr. 20, 2015). As such, the dispute in that case was whether Apple's declaratory judgment suit on a subset of the portfolio should proceed. *Id*. The remaining cases cited by T-Mobile generally relate to instances where patent holders attempted to impose portfolio wide-rates on accused infringers, again a situation not at issue here. *See* Mot. at 11.

---

[3] Some standard setting organizations use the term "RAND" instead of "FRAND." *See*, *e.g.*, *Apple Inc. v. Motorola Mobility, Inc*., No. 11-CV-178-BBC, 2011 WL 7324582, at *1 (W.D. Wis. June 7, 2011) ("The policies often require or encourage members of the organization to identify patents that are essential to a proposed standard and to agree to license their essential patents on fair, reasonable and nondiscriminatory terms to anyone who requests a license. (These terms are often referred to by the acronyms FRAND or RAND.)").

## IV. The Declaratory Judgment Factors Favor Huawei

While styled as a request for dismissal based on missing subject matter jurisdiction, T-Mobile's Motion is more accurately characterized as a request for the Court to use its discretion to deny Huawei's requested relief. For example, ignoring the admitted contract and the undisputed allegations of breach, T-Mobile claims that Huawei's requested declaration of no breach is an "advisory opinion." T-Mobile is wrong.

T-Mobile further confuses the issue before the Court by arguing that any FRAND dispute between the parties should be left to play out in the infringement actions brought by Huawei. *See* Mot. at 16. But T-Mobile cannot accuse Huawei of violating its legal obligation, refuse to negotiate with Huawei, and then also seek to preclude Huawei from seeking redress with this Court. T-Mobile's argument sounds similar to that made in *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008). That case involved a breach of contract claim that the SEP owner, Motorola, refused to extend FRAND licensing terms to RIM. Motorola argued that the Court should not exercise its discretion because, "even if it has breached its agreements …, eventually RIM will receive a FRAND license; either this court will determine FRAND terms or the parties will settle on FRAND terms on their own." *Id.* at 797. The court said:

> This argument is inherently flawed. Motorola argues that RIM has two paths before it, both of which lead to fair licensing terms. One of these paths is this court; the other is negotiation outside the court. RIM pleads—and the court must accept as true at the Rule 12(b)(6) stage— that Motorola has already refused to negotiate fair terms outside this court. Motorola has blocked that path. Now, Motorola argues, the court should block the only other available path by dismissing this case. Motorola is correct that, in the end, RIM will receive fair licensing terms. But if those terms must be dictated by this court, it cannot dismiss the action before it has a chance to do so. The court will not dismiss RIM's breach of contract claims on the ground that it has suffered no injury.

*Id.* Huawei respectfully submits that this Court should reach the same conclusion here.

As with the rest of its motion, T-Mobile wrongly focuses on Huawei's patent infringement allegations in other cases, rather than ***T-Mobile's*** contractual allegations against Huawei in this case. *See* Mot. at 15-16. For example, T-Mobile contends that a ruling would "not dispose of the parties' patent dispute" because "no patents are asserted." *Id*. at 16. Again, the locus of Huawei's declaratory judgment claim does not seek an infringement judgment against T-Mobile in this action, but to resolve the parties' rights regarding Huawei's contractual obligation regarding its hundreds of LTE essential patents. The portfolio-wide analysis in this contract case is beyond that required to adjudicate T-Mobile's largescale infringement of Huawei's asserted patents. Indeed, based on its rhetoric, T-Mobile is asking this Court to dismiss an admitted contract dispute in lieu of many dozens of separate infringement actions. In reality, this contract case based on a portfolio offer could be ready for trial much faster than the separate infringement actions accusing T-Mobile's networks, including their associated hardware and software. As such, there is no reason the current infringement cases and this contract case cannot proceed in parallel, which would serve judicial economy.

And even though it wrongly focuses on its own infringement (rather than its contract allegations), T-Mobile fails to show compelling reasons for dismissal under controlling Fifth Circuit law. As a preliminary matter, T-Mobile does not dispute that many of the seven factors to be considered in deciding whether to dismiss a declaratory judgment action weigh in favor of adjudicating Huawei's claim. *See Sherwin-Williams Co. v. Holmes Cnty.,* 343 F.3d 383, 388 (5th Cir. 2003) (setting forth factors). For example, there is no pending state action in which all of the matters in controversy may be fully litigated (factor 1), Huawei filed suit in anticipation of a breach of contract lawsuit being filed by T-Mobile (factor 2); Huawei did not engage in forum shopping (factor 3); there are no inequities in allowing Huawei's declaratory judgment suit to

precede a breach of contract claim, were T-Mobile to file one (factor 4); Federal Court is a convenient forum for the parties and witnesses (factor 5); and the Court is not being called on to construe a state judicial decree involving the same parties (factor 7).

The *only* factor that T-Mobile alleges weighs against Huawei's claim is the sixth – considerations of judicial economy. But again, T-Mobile's arguments are misplaced. For example, T-Mobile's Motion never suggests that T-Mobile will not assert a future breach of contract claim again Huawei. As such, if Huawei's declaratory judgment complaint is dismissed, then T-Mobile may raise its breach of contract FRAND allegations in any future suit between the parties, thereby wasting party and judicial resources and creating a risk of duplicative or inconsistent judgments. By contrast, allowing this contract dispute to be adjudicated now would quickly, and affirmatively, establish that Huawei has not breached any FRAND obligation with respect to its hundreds of LTE essential patents. Because the parties would be estopped from re-litigating this argument, judicial economy favors adjudicating Huawei's claim – and T-Mobile's clear threat – now.

## V.     Conclusion

For the reasons stated above, Huawei respectfully requests that the Court deny T-Mobile's Motion to Dismiss.

Dated: August 15, 2016

Respectfully submitted,

By: */s/ Thomas H. Reger II*
Ruffin Cordell
Texas Bar No. 04820550
cordell@fr.com
Linda Kordziel
DC Bar No. 446386
kordziel@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Leonard E. Davis
Texas Bar No. 05521600
ldavis@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
Jane Du
Texas Bar No. 24076355
du@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

David Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C**.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

**COUNSEL FOR PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on August 15, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Thomas H. Reger II*
Thomas H. Reger II
