**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br>                    Plaintiff, <br><br>     v. <br><br> T-MOBILE US, INC. AND T-MOBILE USA, INC., <br><br>                    Defendants. | Civil Action No. 2:16-cv-00715-JRG-RSP <br><br> Jury Trial Demanded |

**DEFENDANTS T-MOBILE US, INC. AND
T-MOBILE USA, INC.'S REPLY BRIEF IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS HUAWEI TECHNOLOGIES CO.
LTD.'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

Huawei begins its Complaint by alleging that "[t]his is a patent case." (Compl. ¶ 2.) But it is not a patent case—there is not a single patent identified by number in the Complaint, and not a single specific claim of infringement—and Huawei identifies no case in which a court has issued a declaratory judgment of the type Huawei seeks here *without any connection to any infringement claim.* Such an opinion would simply be advisory because it would have no binding legal effect, given the absence of any infringement claim.

Confronted with the deficiencies of the theory underlying its Complaint, Huawei now seeks to recast its claim as a run of the mill contract dispute. Huawei incorrectly contends that it "comes to this Court as any party to a contract accused of a breach may." (Opp. at 5.) First, the only contract Huawei alleges is its own FRAND licensing commitments to ETSI, to which T-Mobile is not a party but simply a third-party beneficiary. As a result, T-Mobile has the option but not the obligation to license Huawei's FRAND-committed patents. Second, Huawei does not actually allege in its Complaint that T-Mobile has made a threat of litigation. With neither a contractual obligation on the part of T-Mobile nor a threat of litigation, Huawei has failed to allege the existence of a contract dispute that could give rise to declaratory judgment jurisdiction. Even if the Court could exercise jurisdiction over this action, Huawei offers no good reason to do so. Huawei has already filed four infringement cases against T-Mobile that will give Huawei the chance to prove the merits of its patents. T-Mobile respectfully requests that its motion to dismiss be granted.

I.   **HUAWEI'S COMPLAINT SEEKS AN IMPROPER ADVISORY OPINION**

    A.   **Huawei's Allegations Are Insufficient To Establish An Actual Case Or Controversy.**

T-Mobile has brought a facial challenge to Huawei's Complaint, the resolution of which

is "limited to whether the complaint is sufficient to allege the jurisdiction."[1] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Further, "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Doe v. Jindal*, No. 15-1283, 2015 WL 7300506, at *5 (E.D. La. Nov. 18, 2015) (quotation and citation omitted). The allegations of the Complaint simply do not establish the existence of a portfolio contract dispute.

### 1. Huawei Has Not Pled That T-Mobile Has A Contractual Obligation To License Huawei's Patents.

Nowhere does Huawei allege that T-Mobile has a contractual obligation to license Huawei's patents. Indeed, Huawei opens its Complaint by alleging that "*[t]his is a patent case* regarding Huawei's obligation to offer a license to certain U.S. patents essential for network systems and services." (Compl. ¶ 2 (emphasis added).) It also claimed that "this Declaratory Judgment action offers the Court – and the parties – an efficient avenue for resolving *this patent dispute*." (*Id.* at ¶ 76 (emphasis added).) Further, Huawei focused its allegations regarding venue on facts regarding alleged infringement, not a contract dispute: "T-Mobile has engaged in activities including: transacting business in this district and purposefully directing its business activities, including the use of its networks in this District, and the sale or offer for sale of services to this District to aid, abet, or contribute to the infringement of third parties in this District." (*Id.* at ¶ 79.) The Complaint is thus squarely aimed at T-Mobile's alleged use and the value of Huawei's patent portfolio.

If, as the law requires, Huawei is held to the actual allegations in its Complaint, the only agreement that Huawei plausibly alleges are its FRAND commitments made to ETSI pursuant to the ETSI Intellectual Property Rights Policy: "Huawei voluntarily *committed to ETSI* to offer

---

[1] For this reason, Huawei's repeated contention that T-Mobile "does not dispute" certain allegations (*e.g.*, Opp. at 3, 4) misses the point. To be clear, T-Mobile does dispute many of Huawei's allegations, but even if all of the allegations in Huawei's Complaint are assumed to be true (as they must be for purposes of a motion to dismiss), jurisdiction is still lacking.

licenses to Huawei's 4G Wireless Network Essential Patents Related to ETSI 4G standards." (Compl. ¶ 82 (emphasis added); *see also id*. ¶ 25.)  The consequence of the FRAND commitments that Huawei has made, as it acknowledges, is that it is required to be "prepared to license anyone, including T-Mobile, on FRAND terms."  (Compl. ¶ 75; *see also id*. ¶ 56.)  T-Mobile is an intended beneficiary of Huawei's FRAND commitments to ETSI but not a party and, accordingly, it is not contractually obligated to license those patents.

In litigation against InterDigital in 2013 in Delaware, Huawei submitted a declaration from a professor of French contract law that explained how the ETSI FRAND commitment forms a third-party beneficiary contract.  Huawei acknowledged that the FRAND commitment creates a right that a third-party beneficiary can choose—but is not obligated—to accept:

> [A] FRAND licensing commitment given by a patent owner under Clause 6.1 of the ETSI IPR Policy . . . constitutes a *stipulation pour autrui*, which is a stipulation for the benefit of a third party.
> . . .
> It is formed via an exchange of consent between two parties, the stipulator (B) and the promisor (A).  Under such a stipulation, promisor (A) commits to stipulator (B) to grant a right to one or more beneficiaries (C, D, and E).  ***The acceptance of the beneficiary is not required to form the contract but the stipulator (B) may not revoke the stipulation once the beneficiary (C, D, and E) has accepted it***.
> . . .
> In the case of a Clause 6.1 undertaking under the ETSI IPR Policy, the patent owner is the promisor (A), ETSI is the stipulator (B), and the implementers of the standard are the beneficiaries (C, D, and E) of the patent owner's (A) promise.

Declaration of Professor Laurent Aynes at ¶¶ 19-20 (emphasis added) (Declaration of Mark D. Selwyn ("Selwyn Decl.") Ex. 1).

Similarly, in *Apple Inc. v. Samsung Electronics Co., Ltd.*, the court addressed the distinction between the contract that is formed by a party making a FRAND commitment to ETSI and the rights that a third party has to benefit from that contract.  2012 WL 1672493, No.

- 3 -

11-CV-01846 (N.D. Cal. May 14, 2012). The court denied Samsung's motion to dismiss Apple's contract claim based on the theory that "Samsung entered into a contract with ETSI when it submitted its FRAND declarations, seeking to have ETSI adopt Samsung's standard essential patents" and that Apple could sue as a beneficiary of that contract. *Id*. at \*11. But the court did dismiss Apple's theory that Samsung's FRAND commitments went one step further and had already created a license agreement between Samsung and Apple, concluding that it was not "plausible that anyone who uses the technology has a preexisting license merely because an ETSI member submitted a FRAND declaration." *Id*. at \*14. The same goes here. Huawei's FRAND commitments to ETSI are intended to benefit third parties, such as T-Mobile, but there is no obligation, if any, imposed on an intended beneficiary like T-Mobile unless and until the parties actually enter a license agreement.

*Microsoft Corp. v. Motorola, Inc.* is not to the contrary. (Opp. at 5-6.) There, Microsoft brought an action to enforce the rights that it had as a third-party beneficiary arising from Motorola's RAND commitments. 854 F.Supp.2d 993, 999 (W.D. Wash. 2012) ("The court agrees with Microsoft that through Motorola's letters to both the IEEE and ITU, Motorola has entered into binding contractual commitments to license its essential patents on RAND terms. . . . Additionally, the court finds that Microsoft, as a member of both the IEEE and the ITU, is a third-party beneficiary of Motorola's commitments to the IEEE and ITU."); *see also*, *e.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F.Supp.2d 1061, 1085 (W.D. Wis. 2012) ("As a potential user of the standards at issue and a prospective licensee of essential patents, Apple is a third party beneficiary of the agreements between . . . Motorola and ETSI.").

Notably, Huawei identifies no case in which a court has done what Huawei asks that this Court do—issue a declaratory judgment at the request of the patent holder addressing whether or

not the patent holder's portfolio offer was FRAND. The cases that Huawei cites are far from "similar" to the situation here. (Opp. at 6.) In each, the court simply addressed a claim based upon an existing agreement between the parties to the litigation. *See State Indus., Inc. v. Fain*, 61 F. App'x 119, 2003 WL 342242 (5th Cir. 2003) (addressing agreement settling class action litigation); *Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.*, 599 F.3d 1277 (Fed. Cir. 2010) (claim based on patent license agreement); *True N. Composites, LLC v. Trinity Indus.*, 65 F. App'x 266, 2003 WL 21206154 (Fed. Cir. 2003) (addressing supply agreement between parties).

### 2. Huawei Has Not Alleged An Actual Threat Of Litigation By T-Mobile.

Even if Huawei could proceed here on a claim based on T-Mobile's option to license Huawei's FRAND-committed patents, Huawei's Complaint also falls short of alleging the "specific and concrete" threat of litigation needed to establish declaratory judgement jurisdiction. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). Huawei now claims that T-Mobile has made "repeated allegations threatening future lawsuits," but in support of that characterization Huawei is only able to point to general statements by T-Mobile expressing dissatisfaction with Huawei's negotiation conduct:

- "without any detail or specific objection, T-Mobile affirmatively asserted that Huawei's FRAND Offer was 'fundamentally inconsistent with Huawei's FRAND obligations.'" Compl. ¶ 51.
- "T-Mobile sent another letter affirmatively alleging – again without support – Huawei 'violate[d] the commitment it made that it would be prepared to license its patents on FRAND terms and conditions.'" Compl. ¶ 52.

(Opp. at 2.) Neither of these allegations even mentions litigation, let alone suggests that T-Mobile has actually threatened to bring a portfolio FRAND breach of contract action against Huawei. Nor is any such allegation made anywhere in Huawei's Complaint. The absence of any such allegation is fatal to Huawei's claim.

Courts in the Fifth Circuit have imposed a substantially higher threshold to find an actual threat of litigation than Huawei has pled here. In *Orix*, for example, a party to a bankruptcy proceeding submitted a filing opposing a motion to quash subpoenas he had served and attached to the opposition as an exhibit a draft motion to set aside a prior judgment against him and his companies. The draft motion was premised on obtaining the discovery that was the subject of the subpoenas that the court had been asked to quash. Based on the filing of the draft motion, the plaintiff brought a declaratory judgment action and "alleged that the threatened claim in the draft motion sought to reopen issues that were barred under the doctrine of *res judicata*" by the prior decision. *Orix*, 212 F.3d at 894. Despite the draft motion, the Fifth Circuit concluded that it did not "believe that the possibility that this motion will be filed is sufficiently immediate and real so as to constitute a justiciable controversy." *Id*. at 896. In *Hillwood Dev. Co. v. Related Companies, Inc.*, No. 3:04-CV-1100-L, 2006 WL 1140472, at \*6 (N.D. Tex. Apr. 28, 2006), the court considered a letter in which an employee of a declaratory judgment defendant had stated he had "no alternative but to pursue other avenues to enforce my rights." The court found that "the letter does not provide certainty that Defendants will sue Plaintiffs; instead, the court must speculate whether a lawsuit might be brought and which causes of action may be pursued," including because the letter did not "indicate when, if at all, such causes of action might be filed" and it did not assert "a specific dollar amount in damages." *Id*.; *see also*, *e.g.*, *Steelplan, Ltd. v. Steel Plan Australia Pty. Ltd.*, No. 3:02-CV-0470-P, 2003 WL 21499303, at \*5 (N.D. Tex. June 25, 2003) (finding no controversy where, among other reasons, "the letters do not threaten the filing of a civil lawsuit, nor do they make reference to specific civil causes of action").

The same goes for the alleged harm to Huawei in its Complaint, which is both insufficient and implausible. Huawei alleges only that resolution of this dispute would be for the

purpose of "assur[ing] the public" that Huawei has lived up to its FRAND commitments:

> Because T-Mobile alleges a violation of Huawei's FRAND commitment, Huawei has no choice but to file this action with this Court to assure the public that Huawei's actions are consistent with its FRAND commitment to ETSI that underscore today's networking and other standards.

(Compl. ¶ 56.) But Huawei has not alleged any public T-Mobile statements about Huawei's conduct. Rather, Huawei's allegations are confined to statements that were made by T-Mobile in letters to Huawei, the contents of which were only made public by Huawei's Complaint. *See* Compl. at ¶¶ 51-52 (alleging statements made in letters from T-Mobile to Huawei). These allegations do not establish that Huawei will suffer an injury caused by T-Mobile that will be cured by this action. *See Orix*, 212 F.3d at 897 (court must determine "whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention").

### B. Huawei Fails To Establish That This Action Could Result In Legally Enforceable Relief.

Huawei identifies no legally enforceable relief that could be gained here. Huawei contends that a "judgment for Huawei would conclusively establish the parties' respective legal rights vis-à-vis Huawei's contractual obligation under the ETSI IPR Policy." (Opp. at 7.) But that is not so. Huawei cannot and does not contend that T-Mobile would be bound to accept Huawei's FRAND offer without any showing that T-Mobile is actually practicing the patents, that they are valid, and that they are enforceable. Likewise, Huawei does not establish that a judgment against it would be legally binding, suggesting only that it could allow Huawei an opportunity to "cure the breach." (Opp. at 7.) Huawei is merely seeking an advisory opinion for the purposes of influencing negotiations that the Court cannot compel to take place.

Huawei's attempt to escape the reasoning of the *InterDigital* decision—that setting a FRAND rate without the ability to compel the parties to accept it would serve "little to no useful

purpose"—is unavailing.  First, as Huawei concedes, the court simply "assume[d], without finding" that there was adversity and that it could set a FRAND rate.  *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 13-cv-00009, 2014 WL 2206218, at *2 (D. Del. May 28, 2014).  Further, as in *Microsoft* and *Apple*, the parties bringing the declaratory judgment claim in *InterDigital* were intended beneficiaries of the FRAND commitments, not the patent holder.  Second, Huawei has no answer to the conclusion of the *InterDigital* court—equally applicable here—that a declaratory judgment would serve "little to no useful purpose."  *Id*. at *3.  That conclusion is directly relevant under the Fifth Circuit's *Orix* standard because even if this action were justiciable and the Court had authority to decide it, the Court would still need to determine whether it was appropriate to exercise its discretion to do so.  212 F.3d at 895.  Reaching a decision that would be of "little to no useful purpose" does not present a case on which the Court should expend its resources.

Further, Huawei simply asserts that, unlike in *InterDigital*, the parties here would "both be bound by the Court's resolution of their contract dispute."  (Opp. at 7.)  But Huawei offers no valid legal basis for that contention—and there is none.  Even if the Court were to entertain this claim and find in Huawei's favor, it could impose no legally binding obligations on the parties.  Under 35 U.S.C. § 284, T-Mobile cannot be bound to pay a FRAND rate without proof that it is actually using valid and enforceable Huawei patents.  And even though Huawei is bound contractually by its FRAND commitments, that neither distinguishes this case from *InterDigital* where InterDigital had also made FRAND commitments, nor establishes that the Court passing judgment on an offer made by Huawei would bind Huawei in any legally enforceable way.  There is, therefore, no "real and substantial controversy admitting of specific relief through a decree of a conclusive character."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937).

The same goes for Huawei's request that T-Mobile be deemed by the Court to be "unwilling." Huawei claims that a ruling on this issue "allows Huawei to pursue injunctive relief, and would subject T-Mobile to the risk of injunction if it elected to continue its LTE network services without a license." (Opp. at 9.) But Huawei has already alleged its "unwilling" licensee theory and sought an injunction against T-Mobile in each of its four pending infringement. Case Nos. 2:16-cv-52 Dkt. No. 1 ¶¶ 32, 90.D; 2:16-cv-55 Dkt. No. 1 ¶¶ 31, 85.D; 2:16-cv-56 Dkt. No. 1 ¶¶ 32, 78.D; 2:16-cv-57 Dkt. No. 15 ¶¶ 32, 75.D. Further, the availability of injunctive relief for infringement has to turn first on a finding of infringement and then on consideration of all the *eBay* factors, including showing a "a causal nexus linking the harm and the infringing acts." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2522 (2016). Likewise, enhanced damages for infringement must turn on the specifics of an alleged infringer's conduct with respect to particular patents. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (describing the "'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business"). Huawei offers no authority that it is appropriate to adjudicate through a separate declaratory judgment action just one potential consideration for whether or not relief should issue in a separate patent case.[2]

## II.     THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION

Even if the Court concludes that Huawei has established jurisdiction for its declaratory judgment claim—and it has not—the Court should decline to exercise it. The relief that Huawei seeks would consume significant judicial resources, yet have no impact on the parties other than potentially giving one more data point for negotiations.

---

[2] As explained in T-Mobile's opening brief, T-Mobile's "willingness" should not be a consideration in whether an injunction issues. *See* Dkt. 12 at p. 12 n.3. But if the Court were to consider that issue, the proper case would be in an infringement action.

Setting a FRAND royalty for Huawei's entire portfolio is an exercise in futility when Huawei has no ability to force T-Mobile to pay that rate. That fact distinguishes this case from *Research In Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788 (N.D. Tex. 2008). (Opp. at 11.) There, Research In Motion could hold Motorola to the FRAND commitments it had made through a breach of contract claim. But here T-Mobile has made no commitment to ETSI or to Huawei that obligates it to negotiate with Huawei or to license Huawei's patents.[3]

Huawei is also incorrect that this case could proceed to trial more rapidly than Huawei's patent cases. (Opp. at 12.) As an initial matter, Huawei has not even identified the specific patents that it contends were the subject of its offer to T-Mobile, which would be necessary for this claim to proceed. For example, in litigation last year between Ericsson and Apple where Ericsson pursued a similar theory against Apple, Magistrate Judge Payne ordered Ericsson "to amend its complaint to include all patents implicated by the FRAND action." Minute Entry at 1, *Ericsson, Inc., v. Apple, Inc.* (Selwyn Decl. Ex. 2). Likewise, in a case where TCL alleged that Ericsson had breached its FRAND commitments through its offers to TCL, the court concluded that "TCL is entitled to know Ericsson's position about what patents it considers essential and what components those patents cover; these are relatively straightforward contention interrogatories that Ericsson should be compelled to answer." Civil Minutes at 4-5, *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson* (Selwyn Decl. Ex. 3).

### III.  CONCLUSION

For the reasons stated above and in its opening brief, T-Mobile respectfully requests that the Court dismiss, with prejudice, Huawei's Original Complaint for Declaratory Judgment.

---

[3] Huawei incorrectly suggests that the *Core Wireless* and *Apple v. Ericsson* cases are irrelevant. (Opp. at 9-10.) But they both stand for the proposition—ignored by Huawei—that an owner of claimed-essential patents has no legal right to compel a party to agree to a portfolio-wide license absent a showing of infringement of specific patents.

| | |
|---|---|
| August 25, 2016 | */s/ Mark D. Selwyn, with permission by Michael E. Jones*  <br>Michael E. Jones <br>SBN: 10929400 <br>POTTER MINTON, PC <br>110 North College, Suite 500 <br>Tyler, Texas 75702 <br>Telephone: (903) 597-8311 <br>Facsimile: (903) 593-0846 <br>Email: mikejones@potterminton.com <br> <br>Mark D. Selwyn <br>(California Bar No. 244180) <br>WILMER CUTLER PICKERING HALE AND DORR LLP <br>950 Page Mill Road <br>Palo Alto, California 94304 <br>(650) 858-6000 <br> <br>Joseph J. Mueller <br>(Massachusetts Bar No. 647567) <br>Cynthia Vreeland <br>(Texas Bar No. 20625150 <br>Massachusetts Bar No. 635143) <br>WILMER CUTLER PICKERING HALE AND DORR LLP <br>60 State Street <br>Boston, MA 02109 <br>(617) 526-6000 <br> <br>*Attorneys for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via electronic mail on August 25, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Michael E. Jones*