**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br>                          Plaintiff, <br><br>      v. <br><br>T-MOBILE US, INC. AND T-MOBILE USA, INC., <br><br>                        Defendants. | Civil Action No. 2:16-cv-00715-JRG-RSP <br><br>Jury Trial Demanded |

**DEFENDANTS T-MOBILE US, INC. AND T-MOBILE USA, INC.'S RESPONSE TO HUAWEI TECHNOLOGIES CO. LTD.'S MOTION FOR <u>"SPECIAL FRAND-RELATED CASE MANAGEMENT CONFERENCE"</u>**

**I.    INTRODUCTION**

Plaintiff Huawei Technologies Co., Ltd. ("Huawei") does not identify a single case—or indeed any authority from anywhere—to support its arguments for an accelerated schedule.  That is not surprising because no court has conducted the type of advisory rate-setting procedure that Huawei seeks here.  To the contrary, when faced with requests to conduct freestanding rate setting—including as requested by Huawei—courts have refused.  The reason is simple: if patents are not actually asserted against a party or if both parties do not agree to the procedure, a court has no means to enforce the rate-setting finding and it will be nothing more than an advisory opinion.  Huawei improperly seeks to use this declaratory judgment action solely to avoid the patent merits and exert negotiating leverage.

Given the basic deficiencies in the complaint, the proper course is dismissal—as requested by T-Mobile's pending motion to dismiss—not acceleration.  There is no good reason to accelerate a flawed proceeding that will have no legally binding effect on the parties.  Indeed, Huawei's motion to accelerate confirms the advisory nature of the relief it seeks because it can only speculate that an accelerated determination here may aid in the damages and permanent injunction phases of the related patent actions.  Damages and injunctive relief, of course, cannot be awarded without first finding infringement of a valid patent.

Nor is there any benefit—apart from Huawei's hope to gain undeserved negotiating leverage—from an expedited schedule.  Huawei claims that a portfolio-wide determination in this action may benefit the related infringement suits at the damages and permanent injunction stages.  But because the assessment of each issue must be specific to the patents asserted in a particular case, a portfolio-wide determination would provide no benefit in the related infringement actions.  As another court reasoned in rejecting Huawei's prior attempt at a similar strategy (similarly under the guise of the benefits to judicial economy): "It does not seem . . .

like a very practicable idea to try to race to a partial judgment here so that [Huawei] will be in a better position in the [related] litigation." *InterDigital Commc'ns Inc. v. Huawei Techs. Co.*, No. 13-08-RGA, 2013 U.S. Dist. LEXIS 187878, at *6 (D. Del. Mar. 14, 2013).

Even if this action were to proceed, it would take vastly more time and inquiry than the six-month period Huawei suggests. Determining a FRAND royalty rate will require a thorough analysis of the merits of each of the 800 patents and patent applications for which Huawei apparently seeks royalties, and, to the extent any patent is found to be valid and infringed, a FRAND determination for each. This includes not only an assessment of whether each patent is actually essential to the standard, valid, and infringed, but also the importance of the relevant portion of the standard to the accused product or system.

Accordingly, Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively, "T-Mobile") respectfully request that Huawei's Motion for "Special FRAND-Related Case Management Conference" be denied.

## II.   ARGUMENT

### A.   Huawei's Flawed Claim Should Be Dismissed, Not Expedited.

Huawei's declaratory judgment claim is fundamentally flawed and should be dismissed because a determination here will not alter the parties' rights. *See* T-Mobile's Motion to Dismiss Huawei's Complaint for Lack of Subject Matter Jurisdiction, July 27, 2016, Dkt. No. 12. Far from showing a reason to expedite this case, Huawei's motion reveals its true motive—bypassing the parties' pending patent litigations in an attempt to obtain an advisory opinion for leverage in the parties' negotiations—and should be denied.

Notwithstanding its recent attempt to re-cast this action as a "contract" case to distinguish it from the pending patent suits,[1] Huawei now recognizes the reality that any actual relief related to its patents must be obtained through adjudication on the patent merits in those cases. As Huawei states, "[a]ll of these cases arise from the same set of operative facts," such as the alleged use of Huawei's "technology throughout T-Mobile's wireless LTE networks," and "[i]nvolve [c]onnected [i]ssues." Mot. at 2, 3. In light of the related nature of these cases, according to Huawei, "the FRAND rate for the entire portfolio" may become relevant to damages were the parties "to try the individual patent actions." *Id.* at 4. Huawei similarly argues that the issues of "whether Huawei had previously made FRAND-compliant offers and whether T-Mobile had rejected such offers" will be relevant "[s]hould any of the patent actions proceed to the stage of motions for permanent injunction." *Id.* Thus, as Huawei acknowledges, the speculated relevance as to damages and injunctive relief would arise only if there is first a finding of infringement. Huawei's speculation as to how a determination here *might* be used in the patent infringement actions reinforces the advisory nature of the declaratory judgment it seeks.

But Huawei should not be allowed to bypass the parties' pending patent litigations in this Court, where Huawei will have to try to meet its burdens in the traditional course of a patent infringement suit. As another court recently observed of such a strategy, "there exists no legal basis upon which Apple may be compelled to take a license for Ericsson's patents on a portfolio-wide basis"—here, the issue of whether Huawei offered a FRAND rate for its portfolio is similarly just "a partial presentation of a business dispute." *Apple Inc. v. Telefonaktiebolaget LM*

---

[1] In opposing T-Mobile's motion to dismiss, and in contrast to its efforts here, Huawei attempted to establish that its pending patent actions were not related to its declaratory judgment action. *See, e.g.*, Huawei's Response to T-Mobile's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 1, Aug. 15, 2016, Dkt. No. 17 ("By focusing on infringement, T-Mobile fundamentally misrepresents the basis and scope of Huawei's declaratory judgment action. . . . [T]his is not an action for patent infringement or patent damages.").

*Ericsson, Inc.*, 2015 U.S. Dist. LEXIS 52408, at *5-6 (N.D. Cal. Apr. 20, 2015).  Likewise, in *Zenith Elecs., LLC v. Sceptre, Inc.*, the court denied a "stay of all aspects of the case other than the determination of the [FRAND] license rate for the patents in suit."  2015 U.S. Dist. LEXIS 33560, at *2-3 (C.D. Cal. Feb. 5, 2015).  Such a determination "could be entirely academic," the court reasoned, because the defendant "has not admitted that it practices the patents-in-suit or that they are in fact essential to the ATSC Standard." *Id.* at *5.  That reasoning carries even more weight here, where Huawei seeks adjudication of a FRAND rate not only for the patents asserted in the related infringement suits, but for its entire portfolio of U.S. patents it contends are essential to LTE.

Huawei's strategy is similar to one that this Court recently faced in *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, where Core Wireless sought a determination on a FRAND rate for its entire portfolio of declared-essential patents while asserting only a handful of them.  Core Wireless pursued a contract claim alleging that it had "negotiated in good faith and has offered a FRAND royalty rate to Apple" for its portfolio, and seeking a ruling that Apple "is not a willing licensee."  Selwyn Decl. Ex. 1 at 20, 27 (Answer and Counterclaims, *Core Wireless*, No. 6:12-CV-100, Dkt. No. 115 (E.D. Tex. July 2, 2013)).  Core Wireless suggested that these issues could be accomplished expeditiously with the infringement case.  Selwyn Decl. Ex. 2 at 9:18-11:1 (Hrg. Tr., *Core Wireless*, No. 6:12-CV-100, Dkt. No. 216 (E.D. Tex. May 1, 2014)).  But Magistrate Judge Love observed that Core Wireless's proposal improperly ignored the patent merits:  "[T]hese remaining patents, there's no proof of any of this.  Theoretically they could be just complete garbage patents, you know, because we don't have the others presented, they're not -- you know, experts aren't weighing in on them and all that." *Id*. at 12:10-15.  Judge Love thus stayed Core Wireless's request for adjudication of a portfolio royalty, and instead concluded

that the case should proceed to trial limited to the patents that Core Wireless had actually asserted against Apple. *See* Selwyn Decl. Ex. 3 at 1 (Order, *Core Wireless*, No. 6:12-cv-100, Dkt. No. 207 (E.D. Tex. May 2, 2014)) ("[N]o expert may opine on any patents other than the eight remaining patents-in-suit until such a time as the aforementioned stay is lifted."). After trial, Judge Gilstrap dismissed with prejudice Core Wireless's portfolio-adjudication contract claim, finding there was no evidence of any contract requiring a duty to take a portfolio license. *See* Selwyn Decl. Ex. 4 (Memorandum Opinion and Order, *Core Wireless*, No. 6:12-cv-100, Dkt. No. 466 (E.D. Tex. Aug. 11, 2015)).

Ultimately, Huawei has not identified a single case that has decided a claim remotely like Huawei's. Because the determination of a portfolio-wide FRAND rate in this case would constitute an advisory opinion, this case should be dismissed and not expedited.

**B.      Huawei Is Wrong About The Benefits Of An Accelerated Schedule.**

If not dismissed, Huawei points to no actual benefit of expediting this proceeding to occur before the patent trials. Notably, Huawei does not suggest that the expedited proceeding it seeks would actually resolve any of the issues between the parties. Huawei instead argues that, because "FRAND issues impact [all] five cases," accelerating its declaratory judgment action may benefit the infringement actions with respect to determinations of damages and injunctive relief. Mot. at 4. Huawei is wrong. No such benefit would follow because the related patent actions and issues involve facts specific to the asserted patents that will not be aided by portfolio-wide conclusions.

As this Court recognized in the related patent actions, "[d]amages assessments in FRAND cases raise highly patent-specific issues because in FRAND cases the focus is on apportioning-out the value of the patent from the standard." Order at 3, *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-52, Dkt. No. 54 (E.D. Tex. July 11, 2016) (citing *Ericsson,*

*Inc. v. D-Link Sys.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) ("We [] hold that the royalty for SEPs should reflect the approximate value of that technological contribution, not the value of its widespread adoption due to standardization.")). The patent-specific nature of the damages inquiry in FRAND cases would therefore not benefit from a portfolio-wide determination that did not take into account the specifics of the particular patents asserted in an infringement action.

Injunctive relief similarly must be tied to the particulars of the asserted patents and would not benefit from a portfolio-wide determination. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) (holding that plaintiff must establish "some causal nexus between [defendant's] infringement and the alleged harm to [plaintiff] as part of the showing of irreparable harm"). Huawei will have to show "that the infringement caused harm in the first place," for "[i]f the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product." *Id.* In addition, as Huawei admits, such a showing is required only "*if* any of the patent infringement actions proceeds to the stage of a motion for permanent injunction." Mot. at 4 (emphasis added). And even "if" any of the infringement actions proceed to the permanent injunction stage, the only benefit Huawei suggests is that the issue of "whether Huawei's prior offers were FRAND-compliant" may be resolved in advance and bind the parties by issue preclusion. *Id.* But Huawei does not explain why this issue could not be bindingly resolved through one of the related patent actions. Not surprisingly, Huawei identifies no case in which a court has pre-litigated one aspect of whether an injunction should issue because of the possibility that, in a later case, infringement of a valid and enforceable patent may be found.

Indeed, Huawei had previously asserted similar arguments to expedite a FRAND rate determination in another case and was rejected. In *InterDigital Communications Inc. v. Huawei*

*Technologies Co.*, Huawei moved for "expedited discovery and trial" on its counterclaim seeking "that [the court] grant a declaratory judgment setting a FRAND rate for three patents." No. 13-08-RGA, 2013 U.S. Dist. LEXIS 187878, at *5 (D. Del. Mar. 14, 2013). Even though Huawei "state[d] that it will accept whatever FRAND rate the Court determines in this expedited proceeding," the court concluded that "determination of the FRAND rate would at most resolve a tiny sliver of this case." *Id.* at *5-6. In particular, the court rejected Huawei's contention— similar to its contention here—that expediting adjudication of portfolio-wide FRAND issues would benefit other patent litigation pending between the parties: "It does not seem to me like a very practicable idea to try to race to a partial judgment here so that [Huawei] will be in a better position in the ITC litigation." *Id.* at *6. The court denied Huawei's motion, and the same result should follow here.

In short, there is no benefit to expediting this flawed proceeding. Huawei's proposed schedule only potentially benefits Huawei's position in the parties' licensing negotiations, and comes at the expense of the Court's and parties' resources in preparing for a trial and a jury's time to evaluate the merits.

    **C.    Huawei Grossly Understates The Time And Inquiry Required To Litigate This Action.**

If Huawei's flawed portfolio claim were to proceed, it would require vastly more time and inquiry into the merits than Huawei proposes. Huawei has identified over 800 patents and patent applications that it has unilaterally declared essential to various standards. Original Complaint for Declaratory Judgment ¶ 26 & Ex. A, July 5, 2016, Dkt. No. 1. According to Huawei, this action will require only "limited discovery" that "could be completed in less than 6 months, with a trial shortly thereafter." Mot. at 6. But in cases where the parties have agreed to a rate-setting procedure as part of a contract action or because the patents were actually

asserted—neither of which is the case here—courts have recognized that a detailed examination of the patents at issue is required.

In *Microsoft Corp. v. Motorola, Inc.*, for example, the parties agreed that the court should conduct a rate-setting determination of the range of RAND rates for Motorola's portfolio to aid the jury in determining whether Motorola breached its RAND commitments with Microsoft. 2013 U.S. Dist. LEXIS 60233, at *10-11, 15-16 (W.D. Wash. Apr. 25, 2013). The court conducted a thorough patent-by-patent analysis of the technical merits of numerous patents in order to determine a RAND royalty rate. *Id.* at *83-190. The court observed that an alleged infringer "would see little to no value in licensing a [declared-essential patent] if that patent did not cover a portion of the standard utilized by the" alleged infringer. *Id.* at *122. In a bench trial, the court therefore "examine[d] the importance of Motorola's patent portfolio to the H.264 Standard and to Microsoft products using the standard," including an assessment of "whether or not technically feasible alternatives existed for Motorola's 802.11 SEPs when the 802.11 Standard was being developed." *Id.* at *65-66, 156; *see also id.* at *122 ("[T]he court's RAND-modified Georgia-Pacific analysis . . . require[s] the court to examine the importance of Motorola's [declared-essential patents] not only to the . . . [s]tandard itself, but also with respect to Microsoft's products."). The court expected, among other things, "sufficient explanation as to why any of [Motorola's] SEPs relate to the 802.11 Standard" through "expert or fact testimony that one or more claims of its SEPs do in fact cover portions of the 802.11 Standard." *Id.* at *153-54. The court also examined in detail the circumstances under which allegedly comparable agreements were entered, *see id.* at *190-284, including discounting those that were the product of the coercive threat of litigation, such as "avoid[ing] an exclusion order." *Id.* at *204. In

contrast to Huawei's six-month expedited schedule, this bench trial was conducted two years after the complaint was filed and resulted in a detailed 207-page decision. *Id.* at \*15-16.

The same was true in *In re Innovatio IP Ventures, LLC*, 2013 U.S. Dist. LEXIS 144061 (N.D. Ill. Sept. 27, 2013). There, the parties stipulated that "many of Innovatio's asserted patent claims were essential," and the court determined that the remaining 168 claims were actually essential. *Id.* at \*41. Only then, after having established essentiality on a patent-by-patent basis, the court considered in depth the relative importance of each of the patent families at issue through expert testimony, testing data on the rate of usage of the patented technology, consideration of potential alternatives at the time of standardization, and comparable licenses. *See id.* at \*96-160.

As noted above, in *Core Wireless*, Judge Love also recognized that adjudication could not take place on the portfolio-wide basis that Huawei advocates because proof would be needed as to the merits of particular patents—"[t]heoretically they could be just complete garbage patents." Selwyn Decl. Ex. 2 at 12:10-15 (Hrg. Tr.). Indeed, at trial, Apple was found not to infringe any of the five asserted patents—and Core Wireless had dropped its infringement allegations as to nine other patents during the case—demonstrating that a party's self-declaration of essentiality of a patent does not mean that it is necessarily being used by a party implementing the standard. *See* Selwyn Decl. Ex. 5 (Verdict, *Core Wireless*, No. 6:12-cv-100, Dkt. No. 399 (E.D. Tex. Mar. 16, 2015)).

Here, Huawei's proposed schedule does not in any way account for the numerous issues that will arise in a far-ranging trial over the value of a large patent portfolio. Huawei simply ignores the lessons of cases such as *Microsoft* and *Innovatio* and baldly asserts that virtually no discovery will be required here: "There will be no need for any source code discovery or expert

testimony. There will be no need for any infringement discovery or expert testimony. There will be no need for any validity discovery or expert testimony. . . . Discovery will generally be limited to licensing, negotiations, and sales topics." Mot. at 5.

Huawei's conception of how this case could proceed is not realistic. Indeed, to date Huawei has only identified the patents it has "declared essential" and has not yet identified which of those it contends are actually essential. *See* Complaint ¶ 26, Dkt. No. 1. Without any narrowing, Huawei's schedule would require T-Mobile to take discovery and conduct technical and FRAND analyses of over 140 patents per month.

Once narrowed to the patents for which Huawei seeks FRAND royalties, T-Mobile would be entitled to adequate discovery. As *Microsoft* and *Innovatio* demonstrate, there would need to be discovery related to whether the patents are actually essential and infringed. The process will also necessarily involve third parties, such as Nokia and Ericsson, which supply certain of the accused components. *See* Ericsson's Motion for Leave to Intervene, *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-52, Dkt. No. 95 (E.D. Tex. Sept. 16, 2016); Nokia's Motion for Leave to Intervene, *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-52, Dkt. No. 32 (E.D. Tex. June 10, 2016). Further, T-Mobile would be entitled to challenge the validity and enforceability of the patents as it could not be expected to pay royalties for invalid or unenforceable patents. After those threshold issues, the question of the value of particular patents would need to be addressed "based on the incremental value that the patented *invention* adds to the product, not any value added by the standardization of that technology." *Ericsson, Inc.*, 773 F.3d at 1232. Further, as to the limited licensing evidence that Huawei incorrectly suggests would be sufficient discovery, T-Mobile would need an opportunity to gather evidence showing that allegedly comparable licenses are "tainted by the coercive

environment of patent litigation." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).

Cut to its core, Huawei's complaint effectively accuses T-Mobile of portfolio-wide infringement and seeks a portfolio rate set based on the value of its patents. Thus, if the case proceeds, rather than expediting it, Huawei should instead be required to comply with the Rules of Practice for Patent Cases before the Eastern District of Texas. The deadlines set forth in the Patent Rules are to provide sufficient time for a meaningful inquiry into the merits, and confirm that Huawei's proposal for discovery to be "completed in less than 6 months, with a trial shortly thereafter," is not feasible. Huawei seeks the adjudication of its entire portfolio without providing an opportunity to meaningfully analyze the specifics of each patent in the portfolio— Huawei identifies no case that has done so, much less a case that has done so in six months. If the Court does not dismiss this case, it should certainly not expedite it.

## III. CONCLUSION

For the reasons stated above, T-Mobile respectfully requests that the Court deny Huawei's Motion for "Special FRAND-Related Case Management Conference."

October 24, 2016

*/s/ Mark D. Selwyn*
*(by Michael E. Jones, with permission)*
Michael E. Jones
Texas Bar No. 10929400
Email: mikejones@potterminton.com
E. Glenn Thames, Jr.
Texas Bar No. 00785097
Email: glennthames@potterminton.com
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Mark D. Selwyn
(California Bar No. 244180)
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
(650) 858-6000

Joseph J. Mueller
(Massachusetts Bar No. 647567)
Cynthia Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Defendants T-Mobile US, Inc. and T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via electronic mail on October 24, 2016 to all counsel of record for Plaintiff who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Michael E. Jones*
Michael E. Jones