**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **HUAWEI TECHNOLOGIES CO. LTD.,**  **Plaintiff,**  v.  **T-MOBILE USA, INC. and T-MOBILE US, INC.,**  **Defendants.** | **Civil Action No. 2:16-cv-00715-JRG-RSP**  **JURY TRIAL DEMANDED** |

**HUAWEI'S REPLY IN SUPPORT OF ITS MOTION FOR A SPECIAL FRAND-RELATED CASE MANAGEMENT CONFERENCE**

T-Mobile's opposition avoids the heart of the parties' dispute. The underlying issue is whether Huawei has or has not complied with its FRAND obligation, which can be readily resolved in this case and which will benefit the related patent infringement cases. Discovery into this targeted issue will be abbreviated, thereby allowing this case to be ready for trial in less time than is scheduled for the patent infringement cases. Indeed, when T-Mobile complains this case is about "leverage," it is effectively conceding that the resolution of this FRAND case (one way or the other) will substantially impact the parties and their dispute. Therefore, Huawei's request for an accelerated schedule, if granted, will conserve party and judicial resources by resolving a common issue before the patent infringement cases.

From the outset of this case, T-Mobile has repeatedly mischaracterized Huawei's breach of contract declaratory judgment claim as a traditional patent infringement case. T-Mobile's older Motion to Dismiss is founded on this misconception, and T-Mobile's current Response here largely rehashes the arguments and cases from that older Motion. *See, e.g.*, Resp. at 2-5. For example, T-Mobile's Response recycles the incorrect argument that Huawei only seeks an advisory opinion for further negotiations. But, as detailed in Huawei's Opposition to T-Mobile's Motion to Dismiss (Dkt. No. 17), this is not a patent infringement case[1] – Huawei seeks a clear declaration that Huawei is not in "violation" of its fair, reasonable, and non-discriminatory (FRAND) obligation. *See* Huawei's Opposition, pp. 8-10. Such a declaration would represent a concrete, and significant, resolution to an issue at the heart of the parties' dispute.

I.  **An Accelerated Schedule is Both Practical and Feasible in this Case**

In contrast to T-Mobile's suggestions, Huawei's Complaint in this case does not ask the Court to find that T-Mobile infringes any of Huawei's patents, nor does it seek an order from the

---

[1] T-Mobile again ignores the title, pleaded basis for subject matter jurisdiction, and requested relief from the Complaint, as well as the Civil Cover Sheet.

Court that T-Mobile pay any damages to Huawei or accept a particular royalty rate. Unlike the *Core Wireless* case, cited repeatedly by T-Mobile in its attempt to reargue its Motion to Dismiss, Huawei is not attempting to use FRAND obligations to impose a license on T-Mobile.[2] As detailed in Huawei's Opposition, the patent holder in *Core Wireless* argued that the ***alleged infringer*** breached a FRAND obligation by not ***accepting*** a license to Core Wireless's patents. *See* Huawei's Opposition (Dkt. No. 17), p. 9. This is the opposite situation of Huawei's claim, where Huawei seeks a declaration ***it*** did not violate its obligation to ***offer*** a FRAND license.

To determine whether or not Huawei complied with its FRAND obligation in offering T-Mobile a license to Huawei's portfolio, it is unnecessary to analyze any issues of infringement, validity, enforceability, or essentiality of each of Huawei's declared-essential patents as alleged by T-Mobile's Response. As examples:

- Huawei's FRAND obligation – the subject of this suit – was established when Huawei declared its patents to ETSI. *See* Complaint (Dkt. No. 1), ¶¶ 25, 56; *see also* T-Mobile's Motion to Dismiss 3-6 (arguing Huawei's FRAND obligation).
- Huawei's ETSI obligation require it to be prepared to grant FRAND licenses to any requesting member of the public, regardless of whether or not such licensee would infringe Huawei's patent. *See, e.g.*, Complaint, ¶¶ 22, 25, 56.
- T-Mobile asserted that Huawei's offer for the U.S. LTE-essential *portfolio* violated Huawei's FRAND obligation, which required Huawei to seek a declaration that its portfolio offer complies with its FRAND obligation. *See id*., ¶¶ 51-52.

In short, when the plain language of the requested relief is properly viewed as a request concerning Huawei's FRAND obligation – not a patent infringement finding – the number of issues for discovery will be limited and can be addressed easily on an accelerated schedule.

---

[2] *Apple Inc. v. Telefonaktiebolaget LM Ericsson* is similarly inapposite. The dispute in that case was whether Apple's declaratory judgment of non-infringement should be dismissed because it would not substantially resolve the parties' global dispute, a claim not at issue here.

Other courts have addressed similar claims in a straightforward manner, without needing to delve into the specific details of every declared-essential patent in the FRAND-licensor's portfolio. For example, in *Apple v. Samsung*, Apple contended that Samsung breached its ETSI FRAND obligation by offering Apple a license to Samsung's entire declared-essential patent portfolio at a 2.4% royalty rate. *See Apple, Inc. v. Samsung Elecs. Co.*, 920 F. Supp.2d 1116, 1141 (N.D. Cal. 2013). In essence, Apple's allegation against Samsung is the same as T-Mobile's allegation against Huawei, the only difference being that Huawei filed a declaratory judgment action first. In the *Apple* case, the parties did not undertake exhaustive infringement and validity discovery and analysis, and they certainly did not evaluate each of Samsung's declared-essential patents on its merits. Instead, the parties analyzed "licensing rates in the industry for comparable portfolio's and Samsung's past licensing practices." Ex. A at 21 (Samsung Resp. to JMOL). Similar discovery is all that is necessary here.

Turning to T-Mobile's cited cases involving a detailed examination of the patents, T-Mobile openly admits those cases are distinguishable from the present case: "But in cases where the parties have agreed to a rate-setting procedure as a part of a contract action, or because the patents were actually asserted – **neither of which is the case here** – courts have recognized that a detailed examination of the patents is required." Resp. at 7-8 (emphasis added). For example, in the *Motorola* case cited by T-Mobile, the parties specifically agreed that the court engage in an in-depth analysis of multiple different technology standards from multiple standards setting bodies.[3] *See Microsoft Corp. v. Motorola, Inc.*, 2013 WL 2111217, at *1 (W.D. Wash. Apr. 25, 2013). As established in the *Apple v. Samsung* case, whether a party's portfolio license offer was

---

[3] Even there, the analysis was at a higher level than in a patent infringement case. For example, the court did not construe the claims of the considered patents and its analysis generally reviewed the patents at the family level. *See, e.g., Motorola*, 2013 WL 2111217 at *27, *55.

FRAND requires only an uncomplicated review of industry licensing rates and practices, not a detailed technical analysis. Likewise, in *Innovatio*, each of the patents at issue for FRAND was also an asserted patent for infringement issues – the litigants had expressly put the infringement and validity issues before the court for every patent to be included in the FRAND license. *See In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609, at *1 (N.D. Ill. Oct. 3, 2013). Importantly, both the *Innovatio* and *Motorola* cases ultimately settled after the courts' FRAND determinations, thereby resolving the parties' disputes and foregoing the need for a worldwide campaign of litigation.

In short, an accelerated schedule is warranted in this case in view of the simple nature of the dispute and requested relief.

II. **An Accelerated Schedule Would Benefit Other Cases**

T-Mobile wrongly contends that this determination here "will not be aided by portfolio-wide conclusions." *See* Resp. at 5. As explained in Huawei's Motion, a determination that Huawei's portfolio offer to T-Mobile complied with Huawei's FRAND obligation would simplify the liability portions of the parties' patent infringement cases. Resolving the parties' FRAND dispute early would have a preclusive effect in the individual infringement actions, both in the calculation of damages and with regards to Huawei's injunction requests. Indeed, those intervening in the infringement cases on T-Mobile's behalf have asserted defenses alleging that Huawei's damages against T-Mobile are limited to FRAND terms. *See, e.g.*, Dkt. No. 39 at 14, 2:16-cv-00052 (tenth affirmative defense). While T-Mobile would not be bound to take a license to Huawei's portfolio, T-Mobile would be bound by the Court's determination that Huawei's portfolio offer complied with its FRAND obligation and would not be able to raise this issue in each of the other cases. And, contrary to T-Mobile's suggestion, the Court's determination here

will bear on equitable factors related to the injunctions in those cases.[4] Adjudicating this case in advance of Huawei's patent infringement cases would simplify those other cases and conserve judicial and party resources in advance of preparing for those trials.

T-Mobile also wrongly suggests that this issue could simply be addressed by the first of the infringement actions. This approach should be rejected because it would still expend substantial party and judicial resources in preparing the issue for four separate trials. The cases cited by T-Mobile do not counsel otherwise. For example, in the *InterDigital* case, the Court rejected a request to expedite "to race to a partial judgment here so that each defendant will be in a better position in the ITC litigation," and "enjoin the ITC." *See InterDigital Commc'ns Inc. v. Huawei Techs. Co. Ltd*, No. CV 13-8-RGA, 2013 WL 8507613, at *1 (D. Del. Mar. 14, 2013). That is not at issue here, as there is no parallel ITC case or comity issue. In *Zenith,* the Court declined to first determine a FRAND rate and stay the other aspects of the case because the requesting party did not agree to be bound the decision and conclude the license. *See Zenith Elecs., LLC v. Sceptre, Inc.*, 2015 U.S. Dist. LEXIS 33560, at *2-3 (C.D. Cal. Feb. 5, 2015). Here, Huawei and T-Mobile would be bound by the Court's decision into whether Huawei violated – or did not violate – its FRAND obligation.

Accelerating the single FRAND-obligation case schedule, while leaving the multiple patent infringement schedules unchanged, would help resolve the parties' dispute.

### III. Conclusion

Huawei respectfully requests that the Court adopt an accelerated FRAND-related management plan that resolves the FRAND issue in advance of the patent infringement trials.

---

[4] Importantly, the cases cited by T-Mobile regarding "causal nexus" do not involve declared standard-essential patents. In a licensing dispute concerning an essential patents portfolio, a "casual nexus" analysis is very different from that of a non-standard essential patent.

Dated: November 3, 2016                Respectfully submitted,

By: */s/ David Barkan*
Ruffin Cordell
Texas Bar No. 04820550
cordell@fr.com
Linda Kordziel
DC Bar No. 446386
kordziel@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Leonard E. Davis
Texas Bar No. 05521600
ldavis@fr.com
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
Jane Du
Texas Bar No. 24076355
du@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

David Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C**.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

**COUNSEL FOR PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD.**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on November 3, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ David Barkan*
David Barkan
